UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHARLES MULLINAX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:08-cv-0284-TAB-WTL |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING DECISION**

**I.      Introduction.**

Charles J. Mullinax applied for Disability Insurance Benefits and Supplemental Security Income on August 18, 2003, alleging his disability began November 25, 2002. Administrative Law Judge ("ALJ") James R. Norris held a hearing on August 11, 2006, after which he denied Mullinax benefits in a decision dated March 20, 2007. The Appeals Council upheld the ALJ's decision and denied the request for review on January 9, 2008. For the reasons set forth below, the ALJ's decision is affirmed.

**II.      Background.**

Mullinax has several health issues that serve as the basis for his alleged disability: a weak left arm and hand, pulmonary issues, back and hip pain, and a mood disorder. In 1999-2000, following a work-related injury, several workers' compensation doctors found that Mullinax could not lift more than five pounds with his left hand, could not repetitively bend his left wrist, and could not pound with his left hand (permanent). [R. at 543-81.] In April of 2003, a pulmonary function test showed "[m]oderate expiratory airflow obstruction with borderline

reversible component" and "a significant reduction in the diffusion capacity as well." [R. at 291.] Dr. Ratcliff determined Mullinax had dyspnea that rendered him disabled but only temporarily, as his symptoms could be remedied with smoking cessation. [R. at 309.] In August of 2003, an MRI revealed a small central disc protrusion at L4-5 causing an impingement on Mullinax's L5 nerve root. [R. at 418.] In October of 2003, Dr. Haddad performed a left L4 hemilaminectomy and L4-5 disk excision on Mullinax. [R. at 252.] In late 2003 and early 2004, Mullinax was seen by several doctors for a mood disorder. [R. at 26.] In August 2004, Plaintiff's chiropractor, Kenneth Burle, D.C., determined that Mullinax "will most likely be disabled for the rest of his life due to the combination of lung, left radial nerve and Low Back dysfunction." [R. at 779.]

**III.   Discussion.**

The Court will uphold an ALJ's decision as long as the ALJ applied the correct legal standard and substantial evidence supports the decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *see also Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005). In determining whether Mullinax is disabled, the ALJ employed the familiar five-step process. *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ determined in the first step that Mullinax has not engaged in substantial gainful activity since November 25, 2002, the alleged onset date of Mullinax's disability. In the second step, the ALJ determined that Mullinax has two severe impairments: degenerative disc disease with a history of an L4-5 disc herniation and surgery and an affective disorder. In step three, the ALJ determined that Mullinax does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  In reaching this decision, the ALJ specifically evaluated Mullinax's conditions under Listings 1.04 (disorders of the spine), 3.02 (chronic pulmonary insufficiency), 4.00 (cardiovascular system), and 12.04 (affective disorders).  The ALJ further determined that Mullinax has the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours of an eight hour workday, and sit six hours; cannot balance, crawl or climb ladders, ropes or scaffolds; can occasionally bend, stoop, and kneel; must avoid exposure to vibration and unprotected heights; and retains the capacity to perform simple, repetitive tasks.  In step four, the ALJ determined that Mullinax is unable to perform any past relevant work.  In step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mullinax can perform.

Plaintiff maintains the following arguments on appeal: (a) the ALJ erred in finding that Mullinax does not have a severe left upper extremity impairment; (b) the ALJ failed to contact Mullinax's treating physicians for elaboration on the limitations they placed on Mullinax; (c) the ALJ ignored several pieces of critical evidence supportive of a finding of disability; (d) the ALJ failed to properly analyze Mullinax's credibility; and (e) the Appeals Council failed to remand the claim for additional review after receiving new and material evidence.

### A. Left upper extremity.

Mullinax argues that the ALJ erred in determining that Mullinax does not have a severe left upper extremity impairment.  Mullinax's main contention is that several different workers' compensation doctors repeatedly determined that Mullinax has permanent restrictions of not lifting more than five pounds with his left hand, no repetitive bending of his left wrist, and no pounding with his left hand.  Mullinax also argues that the ALJ did not consider the following

assessment by Dr. Berges: "I conclude from the information . . . and from the exam, that the patient's daily activities have been affected due to his herniated discs and left arm weakness." [Docket No. 23 at 6 (quoting R. at 466).]

An impairment is severe if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). It is difficult to ascertain how permanent restrictions of not lifting more than five pounds with his left hand, no repetitive bending of his left wrist, and no pounding with his left hand would not significantly limit the ability to do work activities.

> However, Social Security Ruling 96-4p states:
>
> Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.

The ALJ points out: "Dr. Arthur Lorber, who specializes in orthopaedic surgery, testified the objective medical evidence failed to support any functional limitations in the claimant's use of his left upper extremity." [R. at 24.] Mullinax concedes that the limitations placed by the workers' compensation doctors were determined "despite any objective findings." [Docket No. 23 at 6.] The statement by Dr. Berges fares no better in pointing to any medical signs or laboratory findings. Because Mullinax points only to his symptoms in raising his left arm and left hand weakness, Mullinax's condition cannot be considered a medically determinable impairment.

Mullinax also argues that the ALJ misstated the record by inferring exaggeration by Mullinax based on Dr. Troiano's finding in 1999 that Mullinax's "grip strength effort was invalid due to his lack of effort." [R. at 25 (citing R. at 585).]  The Court agrees that an inference of exaggeration by Mullinax cannot fairly be drawn from Dr. Troiano's statement that the grip strength effort is invalid due to lack of effort by Mullinax.  Dr. Troiano in no way indicated why Mullinax did not give effort to the grip strength test, and it could just as easily be inferred that Mullinax explicitly stated he did not want to give effort to this test due to pain or inability. Nevertheless, this misstatement does not change the fact that the record shows that Mullinax's left arm and hand weakness is only ascertainable by his symptoms.  Accordingly, the ALJ did not err in determining that Mullinax's left arm and hand weakness is not a severe medical impairment.

**B.      Recontacting treating physicians for elaboration on limitations.**

Mullinax argues that the ALJ erred by failing to recontact treating physicians for elaboration on the limitations placed on Mullinax.  According to 20 C.F.R. §§ 1512(e) and 416.912(e), the ALJ is to request additional information from a claimant's treating physicians if the information the ALJ has is inadequate for reaching a decision regarding disability.  Relevant to determining whether an ALJ erred by not requesting additional information from a claimant's treating physicians is whether the claimant is represented by counsel.  If a claimant is unrepresented at the hearing before the ALJ and the ALJ fails to obtain a valid waiver of counsel, the Commissioner has the burden to show that the ALJ adequately developed the record.  *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).  But "a claimant represented by counsel is presumed to have made his best case before the ALJ . . . ."  *Id*.  Mullinax was

represented by counsel at the hearing, so he presumably put his best case forward and the Commissioner has no burden to show that the ALJ adequately developed the record.

Mullinax's specific complaint is that the ALJ noted that neither Dr. Jill Beavins nor Dr. Pratap Singh addressed the extent of Mullinax's limitations but the ALJ assigned the two opinions different value. The ALJ gave weight to Dr. Beavins' opinion to the extent that it supported the RFC determination. However, the ALJ gave little weight to Dr. Singh's opinion that Mullinax had "indefinite functional limitations that prevented him from engaging in any type of gainful employment." [Docket No. 23 at 9 (quoting R. at 31.)]

The ALJ provides explanations for why he gave more weight to Dr. Beavins' opinion than to Dr. Singh's opinion. The ALJ gave weight to Dr. Beavins' opinion "to the extent it supports the RFC established for the claimant" because "it is candid, not overreaching in its scope, and supported by the overall record." [R. at 31-32.] The ALJ gave Dr. Singh's opinion little weight because he "did not elaborate on the specific functional limitations imposed upon the claimant," and "[h]is opinion that the claimant is 'disabled' is given no special significance because that is an issue reserved for the Commissioner by Social Security Ruling 96-5p." [R. at 31.]

In *Freeman United Coal Mining Co. v. Cooper*, 965 F.2d 443, 448 (7th Cir. 1992), the Seventh Circuit determined that Dr. Singh's opinion that Cooper "suffered from chronic lung disease which was causally related to dust exposure from his coal mine employment," supported Cooper's claim even though Dr. Singh made the opinion by checking a box on a DOL form without providing further explanation as requested by the form. The court determined that even though it was problematic that Dr. Singh did not explain himself, his conclusion was supported

by a well-reasoned opinion provided by another doctor. Likewise, in this case, Dr. Beavins' opinion was given weight to the extent it was supported by the record. However, Dr. Singh's contrary opinion in the case at bar was considered but given little weight in this case because of its lack of specificity. The record as a whole is consistent with the ALJ's conclusion that Mullinax is not disabled as defined by the relevant statutes and code, so the ALJ was not misguided when he gave little weight to Dr. Singh's contrary opinion, which Dr. Singh gave without sufficient explanation.

Mullinax argues, however, that "if the ALJ was concerned about the lack of 'specific limitations' given by each doctor, he should have recontacted the doctors to get complete and specific findings by each." [Docket No. 23 at 10.] The ALJ is obligated to recontact the doctors only if the evidence received is inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 1512(e) and 416.912(e); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). As the Commissioner correctly points out, "there was ample evidence in the record upon which the ALJ could make his decision," including "treatment notes, objective testing, consultative examinations, the opinion of a state agency medical consultant, the opinions of specialists, and the testimony of three medical experts." [Docket No. 30 at 16.] Accordingly, the ALJ did not err in weighing the treating doctors' opinions differently and in not recontacting them.

      **C.**      **Credibility determination.**

In making a credibility determination, an ALJ must comply with the requirements of Social Security Ruling 96-7p, which requires the ALJ to articulate the reasons behind credibility evaluations. *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2000). Thus, the ALJ must consider the entire case record, including factors such as the individual's daily activities; the location,

duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication taken; other types of treatment received for pain; and any other factors. Social Security Ruling 96-7p. In making a credibility determination, an ALJ may not ignore the testimony or rely solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). A credibility determination will not be overturned unless it is patently wrong. *Skarbek*, 390 F.3d at 504. "As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

The ALJ determined that Mullinax's medically determinable impairments could reasonably be expected to produce Mullinax's alleged symptoms, but questioned the credibility of Mullinax's statements regarding the intensity, persistence, and limiting effects of these symptoms. Mullinax argues the ALJ did not properly analyze Mullinax's credibility for two reasons. First, he argues the ALJ failed to articulate the duration, location, or aggravating factors of Mullinax's pain. Second, Mullinax argues that the ALJ's skepticism of the effects of his medication is a medical determination not appropriate for the ALJ to make. [Docket No. 23 at 16 (citing *Rohan v. Chater*, 98 F.3d 966, 969 (7th Cir. 1996)).]

While the ALJ did not necessarily articulate every aspect of Mullinax's symptoms, the ALJ did give them explicit and sufficient consideration. For example, he noted Mullinax's statements that he could not use his left arm for work, that he had shortness of breath, that he could not sit for long, and he could not stand for more than 30 minutes without increased back pain and light headedness. The ALJ also considered Mullinax's pain as described in medical records: right leg

pain precluding Mullinax from continuing physical therapy; "central and left-sided low back pain and mild right lower extremity pain" that is between 3.5–10 out of 10; "tenderness to palpation along the bilateral lumbosacral paraspinals"; and "lumbar spine pain that radiated down both legs." [R. at 30.]

Mullinax also argues that the ALJ erred in showing skepticism regarding Mullinax's claims of the effects of his medication. The ALJ explained that he was skeptical of Mullinax's testimony regarding the effects of the drugs because he thought that drawing such conclusions constituted medical determinations by Mullinax, which Mullinax was not in the position to make. Mullinax argues that this skepticism by the ALJ is itself a medical determination that the ALJ cannot make. However, the ALJ's skepticism does not definitively rule out that the symptoms Mullinax claimed he experienced from the medications were indeed from the medications. Rather, the ALJ determined that such a connection could not conclusively be made (presumably either way) by a lay person.

The ALJ's conclusion that "Dr. Troiano inferred the claimant exaggerated his symptoms and limitations when he found the claimant's grip strength effort was invalid due to his lack of effort" is problematic for the reasons discussed above. However, the ALJ provides other sufficient reasons to support his credibility determination such that his decision is not patently wrong. The ALJ describes his own observation at the hour-long hearing that Mullinax "did not appear to have problems sitting and did not stand up, even briefly," which the ALJ gave some weight. [R. at 29.] Most significantly, the ALJ points out that Dr. Lorber called into serious question the medical necessity for Mullinax's alleged need for a cane because, while Mullinax refused to walk without the use of his cane during the examination with Dr. Lorber, Mullinax left

the office without the use of his cane. [R. at 30.] This evidence raises issues about Mullinax's credibility, and thus the ALJ's determination questioning the credibility of Mullinax's statements regarding the intensity, persistence, and limiting effects of his symptoms is not patently wrong.

### D.  Evidence supporting disability.

This Court must uphold the decision of the ALJ if the substantial evidence supports his findings. *Blakes v. Barhart*, 331 F.3d 565, 568 (7th Cir. 2003). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In considering the substantiality of the evidence, this Court must consider both the evidence favoring the Plaintiff as well as the evidence favoring rejection of the claim. *Id*. "The ALJ is not required to address every piece of evidence or testimony presented, but he must provide a 'logical bridge' between the evidence and his conclusions." *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008); *see also Giles*, 483 F.3d at 486.

Mullinax argues that the ALJ ignores several pieces of critical evidence that support a finding of disability. First, the ALJ does not refer in his decision to the October 2003 examination of Dr. Berges, an evaluating doctor, specifically, that Mullinax "has a lot of difficulty getting on and off the examination table"; "is very unsteady on his feet and limps favoring the left side"; "is not able to squat and rise from the squatted position"; "has decreased sensation on anterior side of his left forearm"; and his "[s]traight leg raise test is positive on the left side at 20 degrees." [Docket No. 23 at 12; R. at 465.] Furthermore, a hand grip strength test revealed 10/10/10 lbs force in his left hand, and Dr. Berges' noted low back pain and difficulty walking. Dr. Berges also noted that Mullinax "uses his cane all of the time, and [believes] it is

medically important for him to do that." [Docket No. 23 at 13; R. at 465.] Mullinax questions the ALJ's conclusion that Mullinax does not have "the requisite neuro-anatomic distribution of pain, atrophy, muscle weakness, sensory or reflex loss and positive straight leg raising required by 1.04A" given that Mullinax did have a positive straight-leg raise test, documented neuro-anatomic pain, lumbar range of motion that is not even calculable, and documented pain causing limitations in walking. [Docket No. 23 at 12-13.]

The only argument Mullinax provides for why the ALJ may have erred in failing to address these particular pieces of evidence is that by not addressing them he "ignored critical lines of evidence contrary to his ruling." [Docket No. 23 at 13 (citing *Golembiewski v. Barnhart*, 322 F.3d 912, 917-18 (7th Cir. 2003)).] The ALJ cannot ignore critical lines of evidence, but the ALJ need not address every bit of evidence in the record.

A more complete description of the ALJ's assessment of Mullinax's lumbar condition is: "While the claimant initially had an impingement on the left L5 nerve root that was treated surgically, he did not have the requisite neuro-anatomic distribution of pain, atrophy, muscle weakness, sensory or reflex loss and positive straight leg raising required by 1.04A." [R. at 27.] The significance of the first part of this sentence, which Mullinax left out of his argument, is the implication that the ALJ reasonably considered Mullinax's condition after surgery to be most relevant to understanding Mullinax's present condition. Dr. Berges's evaluation was done prior to surgery, as was the other straight leg test to which Mullinax refers. [R. at 302, 304, 464-66.]

The ALJ's determination that Mullinax's post-surgery status does not meet Listing 1.04A is supported by Dr. Lorber's testimony. [R. at 1131-33.] Dr. Lorber's testimony at the hearing references Dr. Kassab's February 2004 evaluation, which occurred after surgery. This

11

evaluation includes a negative straight leg test and the assessment that Mullinax may not need a cane considering he left the appointment without using it. [R. at 1131-32.] The substantial evidence supports the ALJ's determination, and the evidence he fails to address in his decision is not fatal to his determination.

### E. Receipt of new material by Appeals Council.

Finally, Mullinax argues that the Appeals Council erred when it failed to remand Mullinax's claim after it received evidence that Mullinax has the reading skills of a fourth to seventh grader. In support of this argument, Mullinax cites *Schmidt v. Barnhart*, 395 F.3d 737 (7th Cir. 2005), which states that "[e]vidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Id*. at 742. Mullinax's reading and writing skills were tested on June 13, 2007. [R. at 1115.] This testing occurred after the August 11, 2006, hearing, but Mullinax's reading and writing abilities were available at the time of the hearing. It is not as if Mullinax had been tested before the hearing and was waiting for results or that Mullinax's abilities changed between the time of the hearing and the test. Thus, this evidence was not new at the time of the hearing. Accordingly, the Appeals Council did not err when it did not remand Mullinax's claim for consideration of this evidence.

## IV. Conclusion.

The ALJ did not err in determining that Mullinax's left arm and hand weakness is not a severe medical impairment, nor in giving the treating doctors' opinions different weight and in not recontacting the treating doctors. While the ALJ's determination questioning the credibility of Mullinax's statements regarding the intensity, persistence, and limiting effects of his symptoms is problematic, it is not patently wrong, as the ALJ provides other sufficient reasons to

support his credibility determination. Furthermore, the substantial evidence supports the ALJ's determination, and the evidence he fails to address in his decision is not fatal to his determination. Finally, the Appeals Council did not err when it did not remand Mullinax's claim for consideration of evidence that Mullinax reads at the level of a fourth to seventh grader. The ALJ's decision is affirmed.

Dated: 03/31/2009

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

SSA (Court Use Only)
SOCIAL SECURITY ADMINISTRATION (SSA) added for
email notification purposes to the SSA General Counsel,
pursuant to A.O. memorandum of 7/19/2007.